FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 23 2020 ★
BROOKLYN OFFICE

Hemanth Megnath, 10A2667
Green Haven Corr. Fac.
P.O. Box 4000
Stormville, NY 12582

The Honorable Eric R. Komitte
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

September 16, 2020



Re:    Megnath v. Royce 20-CV-1305
       Queens Co. Ind. 917/07

Dear Judge Komitee:

     Please accept this letter in addition to petitioner's attorney reply, if any, as a supplemental reply to the District Attorney Opposition dated August 21, 2020. First, Respondent asserts at page 2 that exhausting "an ineffective-assistance-of-trial-counsel would be futile, as the claim is procedurally barred in this Court" because an "attack on trial counsel is a matter of the record and so had to be raised on direct appeal", is also unavailing. New York State Case law indicated that a petitioner does not have to raise ineffective assistance of counsel claim on direct appeal. To the contrary, while CPL 440.10 (2) (c) is designed "to prevent section 440.10 from being employed as a substitute for direct appeal" See **Fulton V. Graham**, 802 F.3d 257, 262-63 ( 2d Cir. 2015). New York courts uniformly hold that where, as here, an ineffective assistance of counsel claim turns on facts that are outside of the trial-court record, the claim _must_ be brought in collateral proceedings, not on direct appeal. **Pierotti v. Walsh**, 834 F.3d 171, 178 (2016). In doing so, petitioner, with counsel assistance, and investigation tactics, will submit a _mixed claim_ on a CPL 440.10 Post-Judgment motion pursuant to **People v. Maxwell**, 89 A.D.3d 110 (2d Dept. 2011), upon a stay by this Court.

1

Furthermore, if this Court is still not convince, there are further new LCN DNA facts in which petitioner will add in his CPL 440.10 motion under subdivision (g-1) (2) where their exist a "reasonable probability that the verdict would have been more favorable" which at the very least would afford him a hearing, since the tested method applied in petitioner's case involved 28 amplification cycles of DNA loci **(See Exhibit A Dr. Theresa Caragine Frye hearing dated November 17, 2008 at page 44)** "whereas LCN testing applied additional amplification – 31 cycles". See **People v. Williams**, 35 NY3d 24, 39-40 (2020).

Petitioner should emphasis that the expertise and validation of Dr. Theresa Caragine (which her testimony in other cases have been questioned by other courts referring DNA) were not and is no longer valid for mixtures which is now contrary to her testimony in petitioner's case. See Hearing transcripts of Dr. Caragine at stating validation for LCN page 10-11.**Exhibit A**. All along, the Father of American DNA, expert Dr. Budowle, as claimed at petitioner's trial was acceptable. *William* at *33. As for the Ineffective assistance of Appellate counsel, Respondent concedes that petitioner does have an avenue via an Error Coroam Nobis to bring such issue to the lower court.

Second, the opposition's assertion that the complexity of petitioner's claim is not an issue because "there is an extensive record addressing the admission of the LCN DNA evidence" is disingenuous. Petitioner was the first defendant to be tried under the LCN DNA in New York State under a criminal charge. (**People v. Megnath**, 27 Misc. 3d 405, 898 NYS 2d 408). The LCN was never raised on appeal. Thereafter, in **People v. Collins**, 49 Misc. 3d 59, the leading dissenter Justice Mark Dwyer of the Supreme Court, Kings County, who, as noted, refuse to admit LCN DNA analysis into evidence following a Frye hearing. That ruling followed a hearing in which five biologists or geneticists, including Dr. Bruce Budowle, generally objected to OCME's procedures in the LCN area (See id. at 609-610, 15 N.Y.S.3d 564).

That testimony in *Collins* revealed that LCN is used in two laboratories in the United States (OCME and UNTHS). Of those two, only OCME develops such DNA for use in criminal matters. The testimony also showed that FBI refuses to use high sensitivity analysis, and that the national combined DNA index system (CODIS) will not upload profiles with high sensitivity analysis. Most importantly, though, in that case, a former member of the DNA subcommittee of the New York State Forensic Commission, which had approved OCME's LCN analysis, "defected" and testified for the defense(See id. at 611-613, 15 N.Y.S.3d 564). Since that time, OCME also has abandon LCN testing.

Coincidently, Dr. Bruce Budowle testified in petitioner's case, also testified in Collins, and testified to the junk science in **People v. Willimas**, 35 N.Y.3d 24 (2020), which has now abrogated petitioner's lower court decision. Petitioner's argument here is that prior to his trial there had not been extensive history on LCN DNA in the science community or in the courts. The admission of this evidence which has now been held to be nothing more than scrap science severely prejudiced petitioner. In fact, the record needs to be expanded to include new evidence; including investigating new facts and obtaining sworn statements from Dr. Bruce Budolwe, whose research is now the standard for the scientific community and the New York Courts according to his testimony. See **Hodge v. Police Officers**, 802 F.2d 58, 61 (2nd Cir. 1986) ("the trial judge should be more inclined to appoint counsel if the legal issues presented are complex").

As petitioner is currently incarcerated he does not have the ability to investigate or do the leg work necessary, is not a scientist or a legal professional and does not have the wherewithal to have someone do these type of filings and legal research. Petitioner should also note that he does not have his entire State Record or Transcripts to fully prepare any complex post-judgement motions and does not have

adequate access to the Law Library. For example, petitioner use to attend twice a week before COVID-19 in a facility that holds about 2,000 inmates and because its limited now he can only attend on a first come first basis, which has been once every two to three weeks. See Memorandum from facility dated 7/29/20 **Exhibit B.**

Petitioner wants to admit that he has never done any of his legal work relating to any Federal Court Proceedings as Respondents emphasis such at footnote #5 in her response. Petitioner was getting assistance from a Law Library Law clerk who is no longer able to assist me in my case. See Statement as **Exhibit C.**

In concluding, Respondent citing of Harmon v. Adams, 2011 WL 2961567 at Page 3 actually favors petitioner instead as there are "serious allegations concerning integrity of the DNA evidence presented at trial, as such claim needed full investigation... (because) this is a complex case" The same applies here. Thus, petitioner is asking that counsel be appointed and if a stay is not properly stated here, that he be afforded 30 days to submit one.

Respectfully Submitted

*Hemanth Megnath*

**Hemanth Megnath, 10A2667**

CC:    Michael A. Marinaccio
       Nancy Fitzpatrick Talcott

# EXHIBIT-A

Dr. Theresa Caragine-People-Direct

1    extension.

2            And then we just keep repeating this whole
3    process over and over, just to make more and more copies
4    of our DNA until we have enough that we can visualize our
5    sample.

6        Q    When you repeat the copies, how do the copies
7    multiply every time you make an additional copy?

8        A    Exponentially. So if you have two, you make
9    four, and then so on and so forth.

10       Q    Okay.

11            How many cycles do you run the amplification
12   process through for high copy number DNA?

13       A    For the kit that we use in our laboratory, we
14   perform 28 cycles.

15       Q    Go ahead and tell us about it?

16       A    So this slide is just depicting the three
17   pieces of the cycle denature, annealing, extension. And
18   sort of showing the different temperatures that are
19   applied during that cycle and that the whole fact that
20   cycle just repeats 28 times. That's all it's showing.

21       Q    How do you determine what loci to look at?

22       A    The loci that we examine in the United States
23   were chosen by the FBI, and they chose these for the
24   purposes of the DNA database or CODIS.

25       Q    How many did they choose?

Dr. Theresa Caragine-People-Direct

1   Q   How long were you a criminalist level four?

2   A   Two years.

3   Q   What happened after those two years?

4   A   Then I was promoted to an assistant director.

5   Q   Of what division?

6   A   The Department of Forensic Biology.

7   Q   What were your duties in that position?

8   A   Assistant directors supervise criminalist
9   level fours; so they are a manager of a unit. And at that
10  time, I managed the high sensitivity DNA testing unit, or,
11  another term for it the testing unit that examined very
12  small amounts of DNA that were recovered from crime
13  scenes.

14  Q   Are there any other terms for high sensitivity
15  DNA?

16  A   It's also known as low copy number DNA or low
17  template DNA.

18  Q   Did your supervisory capacity for the high
19  sensitivity DNA have anything to do with your research you
20  had been doing previously?

21  A   Yes, it directly did. In the period before I
22  was promoted to assistant director, I supervised a group
23  of researchers who developed -- who optimized, rather,
24  techniques for low copy number DNA testing. And we also
25  validated those techniques.

sjc

Dr. Theresa Caragine-People-Direct

1   Q   What was your role in the validation of those
2   techniques?
3   A   I supervised the team of researchers who did
4   this work.
5   Q   How long do those validation studies take
6   place -- for how long did those validation of studies take
7   place?
8   A   Over a year of direct validation with many
9   years of optimization prior to that.
10  Q   How long were you a assistant director?
11  A   For two years.
12  Q   And what was the next position you held?
13  A   I was promoted to special deputy director.
14  Q   When was that?
15  A   In June of this year.
16  Q   What are your duties, in your current
17  position?
18  A   I currently help to manage -- I assist another
19  assistant director in the management of the high
20  sensitivity or low copy testing unit, because our unit has
21  grown with the volume of case work and also supervise a
22  group of researchers who continue to work on projects to
23  improve our recovery of small amounts of DNA, as well as
24  other projects in the lab, such as automating the
25  laboratory.

# EXHIBIT-B

 **Corrections and Community Supervision**

ANDREW M. CUOMO  
Governor

ANTHONY J. ANNUCCI  
Acting Commissioner

# MEMORANDUM

TO: Inmate Population

FROM: M. Kopp, Deputy Superintendent Program Services

DATE: 7/29/20

SUBJECT: Law Library Access

The Law Library will continue to be limited to 24 inmates during any given module. Preferential placement on callouts will be made for inmates who have deadlines for legal documents that are due within the **next 30 days**. All other modules will be filled on a first come, first served basis by dropping a slip in the Law Library box.

Please check the Law Library callout daily in your housing unit to see if you are on it.

APPROVED FOR POSTING

Superintendent

# EXHIBIT-C

Jose A. Rodriguez, 11B3913<br>
Green Haven Corr. Fac.<br>
P.O. Box 4000<br>
Stormville, NY 12583

Hon. Eric R. Komitte                                           September 16, 2020
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    I assisted Hemant Megnath, 10A2667 in preparing this reply herein. I am the Administrative Law Library clerk and do the call-outs at Green Haven. I met him in a Christian church before this pandemic where he explained to me his case in bits. I asked him to review his record and said he only had a portion of it. I was the one who also told him what to say at the hearing a few months ago regarding appointment of counsel. He has serious LCN DNA issues, among other things. The truth is, I can't no longer assist him because of the lack of clerks now available in the law library due to numbers being shorten from 48 now to 24. Law clerks went from 10 to 5. If counsel is not appointed, Mr. Megnath will be like a chicken with no head regarding his case.

*[signature]*

Sworn to before me this 16 day
of September, 2020

_____
Notary Public

*[Notary seal: Patrick Leon McNeil, No. 01MC6324978, Exp. 05/18/2023, Bronx County, State of New York]*

RECEIVED SEP 23 2020 PRO SE OFFICE

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
SEP 23 2020 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
Eastern DISTRICT OF NEW YORK

-------------------------------------------------x

Hemant Megnath,

        Petitioner,

-against-

Mark Royce,

        Respondent.

-------------------------------------------------x

**CERTIFICATE OF SERVICE**

Docket No. 20-CV-1305

I, Hemant Megnath, hereby certify under penalty of perjury that the foregoing is true and correct:

I am over eighteen years of age and reside at Green Haven Correctional Facility, P.O. Box 4000, Stormville, New York.

On September 16, 20 20, I served the within Reply Dated 9/16/2020, to Respondent's Opposition. by depositing true copies thereof enclosed in a postpaid wrapper in an official depository under the exclusive control of the U.S. Postal Services within the State of New York and addressed as follows:

Queens County District Attorney
125-01 Queens Blvd.
Kew Gardens, N.Y. 11415

Michael A. Marinaccio
245 Main Street
Suite 420
White Plains, N.Y. 10601

(Address)

Dated: September 16, 2020
Stormville, New York

Hemant Megnath
(Signature)

**GREEN HAVEN CORRECTIONAL FACILITY**
P.O. BOX 4000
STORMVILLE, NEW YORK 12582-4000

NAME: Hemant Megnath        DIN: 10A2667

The Honorable Eric R. Komitee
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201

Legal Mail                                          Legal Mail

NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
OFFENDER CORRESPONDENCE PROGRAM

NAME: Hemant Megnath       DIN: 10 A 2667

Legal Mail

Printed On Recycled Paper