```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 HEMANT MEGNATH,

                        Petitioner,                 MEMORANDUM & ORDER
                                                    20-CV-1305(EK)(LB)

           -against-

 MARK ROYCE,

                        Respondent.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Petitioner Hemant Megnath moves to stay his petition for a writ of habeas corpus pending the exhaustion of his ineffective assistance of counsel claim in state court. Respondent opposes the motion for a stay. For the reasons set forth below, Petitioner's motion is granted.

## I. Background

Petitioner challenges his May 2010 New York State convictions for murder, intimidating a victim, bribing a witness, and coercion. *See* Petition for Writ of Habeas Corpus, ("Petition") at 1, 6, ECF No. 1. The Petition argues that (1) the evidence supporting Megnath's conviction was legally insufficient; (2) the prosecutor engaged in misconduct at trial; (3) the trial court erred in excluding certain alibi evidence; and (4) his trial and appellate counsel were constitutionally

ineffective for failing to adequately challenge the admission of certain DNA evidence. *Id.* at 3, 6-11.

Petitioner states that he has exhausted the first three of these claims but not the fourth. *Id.* at 13. The Respondent agrees that the fourth claim (ineffective assistance) must still be exhausted in a petition for a writ of error *coram nobis* in the Appellate Division. *See* Opposition to Motion to Stay at 1, 3-4, ECF No. 21.

Petitioner's claim of ineffective assistance is predicated on the conduct of his trial and appellate counsel. It relates to the introduction of evidence called "low-copy number," or "LCN," DNA evidence during his trial. Petitioner's trial counsel was constitutionally ineffective, he claims, for failing to "vigorously attack" the admissibility of the LCN DNA evidence and testimony. His appellate counsel was constitutionally ineffective, he argues, for failing to raise the LCN DNA issue in his direct appeal to the Appellate Division. *See People v. Megnath*, 164 A.D.3d 834, *leave to appeal denied*, 32 N.Y.3d 1127 (2018).

The ineffective assistance claim is potentially noteworthy because the New York State courts have shifted course with respect to the admissibility of LCN DNA evidence. After Petitioner's trial, his case stood — for a time — as a leading case in support of the assertion that LCN DNA evidence was

2

"generally accepted" in the community of forensic scientists. *People v. Megnath*, 898 N.Y.S.2d 408 (Sup. Ct. 2010).

The admissibility of such evidence was, however, challenged on appeal in two other cases: *People v. Williams*, 158 A.D.3d 471 (1st Dep't 2018), and *People v. Foster-Bey*, 158 A.D.3d 641 (2d Dep't 2018). The lower courts in those cases had relied on the *Megnath* decision to conclude that LCN DNA evidence was admissible at trial. The New York Court of Appeals heard argument in *Williams* and *Foster-Bey* together in February 2020 — shortly before the instant habeas petition was filed on March 6, 2020.

The Court of Appeals issued its decisions in both cases on March 31, 2020. In *People v. Williams*, the court expressly criticized the *Megnath* holding, writing that "underlying the *Megnath* ruling was an analysis that did not adequately address" whether LCN testing was generally accepted within the scientific community. 35 N.Y.3d 24, 39 (2020); *see also People v. Foster-Bey*, 35 N.Y.3d 959, 961 (2020).[1]

Petitioner now moves to stay his petition and hold it in abeyance while he returns to state court to exhaust his

---

[1] In both of these cases, the trial courts had admitted LCN DNA evidence without a *Frye* hearing, relying on the *Megnath* court's holding. The Court of Appeals held that it was an abuse of discretion to admit the evidence without a hearing and questioned the reliability of the evidence. It ultimately concluded, however, that the improper admission of the evidence was harmless error in light of the other evidence in these cases.

3

ineffective assistance claims. By Order dated November 20, 2020, I directed Petitioner to address the factors set forth in *Rhines v. Weber*, 544 U.S. 269, 277 (2005). *See* Order dated November 20, 2020, ECF No. 14. Though Petitioner is currently proceeding *pro se* on the merits of his Petition, the Court recently appointed CJA counsel to assist him with the motion for stay and abeyance.[2]

Petitioner's counsel filed an amended motion to stay on January 22, 2021, *see* Amended Motion to Stay, ECF No. 16, with a sworn letter-affidavit from Petitioner in support. *See* Affidavit in Support, ECF No. 17. In the affidavit, Petitioner lays out the circumstances surrounding the omission of the LCN DNA issue from his direct appeal.

---

[2] When this case was first transferred to the undersigned, there were two habeas petitions pending — one that Petitioner had filed *pro se*, and one he filed through retained counsel. The two petitions asserted the same claims, except that the *pro se* petition included a claim of ineffective assistance that the other petition omitted. The attorney who filed the other petition was the same lawyer who had represented Petitioner in his direct appeal; that lawyer would, therefore, have had a potential conflict (at least) in continuing to represent him. *See, e.g.*, *Lopez v. Scully*, 58 F.3d 38, 41 (2d Cir. 1995) (district court "correctly concluded that, given the charges of incompetence that Lopez had levelled against his attorney, there was a conflict in this attorney's continued representation") (cleaned up); *cf. Ciak v. United States*, 59 F.3d 296, 303 (2d Cir. 1995) ("It is the rare attorney who can be expected to contend on appeal that his representation was so poor that he deprived his client of a fair trial."), *abrogated on other grounds by Mickens v. Taylor*, 535 U.S. 162 (2002).

Following a conflict hearing (with CJA counsel present to advise on the conflict issue), Petitioner advised the Court that he wanted to proceed *pro se* on the petition that included the ineffective-assistance claim. ECF Nos. 9, 10. Given the complexity arising from the conflict issue, and the passage of time, the Court asked CJA counsel to continue to represent Petitioner for the limited purpose of the instant stay-and-abeyance motion. ECF No. 9.

4

## II. Discussion

Petitioner has filed a "mixed petition" — that is, one containing both exhausted and unexhausted claims. A court can, in certain circumstances, stay the habeas proceeding to allow a petitioner to return to state court to exhaust his claims. *Rhines*, 544 U.S. at 277. This is not possible, however, where exhaustion is barred because the petitioner's claims are "procedurally defaulted." *E.g.*, *Rodriguez v. Superintendent of Clinton Corr. Facility*, No. 18-CV-6202, 2019 WL 1988573, at *1 (S.D.N.Y. May 4, 2019). In general, claims brought in a habeas petition are procedurally defaulted if they should have been raised on direct appeal but were not. *E.g.*, *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991)). A petitioner may overcome this default by showing that his appellate counsel was constitutionally ineffective for failing to raise the argument. *See Morales v. United States,* 651 F. App'x 1, 5 (2d Cir. 2016)). But that ineffective assistance claim, too, must first be exhausted in state court. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (citing *Murray v. Carrier*, 477 U.S. 478 (1986)). In New York State, the proper vehicle for exhausting a

5

claim that appellate counsel was ineffective is a petition for a writ of error *coram nobis*.[3]

Petitioner requests that his habeas case be stayed so he can pursue that petition in the Appellate Division. Courts may stay mixed habeas petitions only "in limited circumstances" to allow a petitioner to litigate unexhausted state claims. *Rhines*, 544 U.S. at 277. The Supreme Court has stated that "[s]tay and abeyance, if employed too frequently, has the potential to undermine" the "twin purposes" of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") of 1996 — namely, reducing delays and encouraging exhaustion of state remedies prior to habeas filings. *Id.* at 276-77. Under *Rhines*, therefore, a stay is appropriate only when the petitioner can show (1) that he had "good cause" for his failure to exhaust his claims first in state court; (2) that his claims are not "plainly meritless"; and (3) that he has not engaged in "intentionally dilatory litigation tactics." *Id.* at 277-78.

**A. Good Cause**

The *Rhines* court did not define the term "good cause." District courts have determined that good cause "requires a

---

[3] *E.g., Garcia v. Scully*, 907 F. Supp. 700, 706-7 (S.D.N.Y. 1995) ("The issue of whether appellate counsel was ineffective . . . must be presented to the Appellate Division. The only procedure in New York for doing so is an application for a writ of error coram nobis to the Appellate Division department that affirmed the conviction.").

6

showing of either (1) some factor external to the petitioner [that] gave rise to the default or (2) reasonable confusion, which is more forgiving and incorporates the petitioner's subjective reasons for the delay in seeking state relief." *E.g.*, *Jeffrey v. Capra*, No. 20-CV-232, 2020 WL 4719629, at *2 (E.D.N.Y. Aug. 12, 2020) (quotations omitted).

Petitioner has established good cause for the failure to exhaust his claim that appellate counsel was constitutionally ineffective, given that his allegedly ineffective appellate attorney continued to represent him after the direct appeal concluded. "Even without a precise definition of good cause, there is a general consensus that an ineffective assistance of counsel claim itself is good cause." *Schouenborg v. Superintendent, Auburn Corr. Facility*, No. 08-CV-2865, 2013 WL 5502832, at *10 (E.D.N.Y. 2013); *see also Bryant v. Greiner*, No. 02-CV-6121, 2006 WL 1675938, at *5 (S.D.N.Y. June 15, 2006) (Ellis, M.J.). These cases generally so hold based on the recognition that an "appellate attorney cannot be expected to raise his own ineffective assistance." *Wallace v. Artus*, No. 05-CV-0567, 2006 WL 738154, at *4 (S.D.N.Y. Mar. 23, 2006) (quoting *Martin v. Warren*, No. 05-71849, 2005 WL 2173365, at *1 (E.D. Mich. Sept. 2, 2005)).

That reasoning is precisely applicable here, given that Petitioner's appellate counsel (who argued against raising

7

the LCN DNA issue on appeal) continued to represent Petitioner throughout the state appellate proceedings and thereafter — indeed, through the initiation of a habeas petition in the instant case. *See supra* note 2. By the time Petitioner elected to proceed *pro se* and manage this case himself, the statute of limitations period under AEDPA was "close to half over." Affidavit in Support at 2. Had Petitioner then attempted to go back to state court before filing here, he would have risked his habeas petition being time-barred under AEDPA. For these reasons, Petitioner has satisfied the good cause requirement.

        Indeed, Petitioner has attempted to go a step further in this case than the precedents cited above would seem to require. He lays out (in sworn, detailed submissions from himself and his sister) how he endeavored to file a supplemental brief on the LCN DNA issue on direct appeal, *pro se*, at the Appellate Division. Affidavit in Support at 1; Declaration of Lisa Bulsara ¶¶ 5-6, ECF No. 25-1. According to Petitioner, the Appellate Division "granted permission" to file the *pro se* brief, but he ultimately acceded to his attorney's advice that he should abandon the LCN DNA issue. Affidavit in Support at 1. He argues that appellate counsel communicated with him inadequately thereafter, for example by failing to advise him that his direct appeal had become final. *Id.* Indeed, only after receiving a letter from the Clerk of this Court did

8

petitioner realize that his appellate counsel had filed a habeas petition on his behalf (and "without [Petitioner's] consent"). *Id.* at 1-2. Petitioner has satisfied the requirement of good cause.

**B.  Potential Merit**

*Rhines* also requires Petitioner to address the merits of his claim in seeking stay and abeyance. Specifically, Petitioner must establish that his claim is not "plainly meritless." This is a fairly modest hurdle: an unexhausted claim is deemed plainly meritless when "it is perfectly clear that the petitioner has no hope of prevailing." *Linares v. People of State of N.Y.*, No. 04-CV-2973, 2008 WL 2115231, at *2 (S.D.N.Y. May 14, 2008).

To demonstrate that counsel's failure to challenge the admission of LCN DNA evidence constituted ineffective assistance, Petitioner must show both that counsel's performance fell below the objective standards of reasonableness dictated by prevailing professional norms, and that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-99 (1984).

Measured against this standard, I cannot say at this point that Petitioner's claim is plainly meritless. The issue of LCN DNA evidence's admissibility under the *Frye* standard was

9

relatively undeveloped at the time of Petitioner's trial — undeveloped enough, indeed, that his case became a milestone of sorts. Given this, it may well be that appellate counsel lacked a strategic basis to sidestep the LCN DNA issue on appeal. At the very least, however, it is not "plainly meritless" to argue that appellate counsel fell short of objective standards by omitting the argument, given how undeveloped the state of New York evidentiary law was on this technology and given the New York Court of Appeals' apparently low opinion of the trial court's ruling in Megnath's case.[4]

Likewise, the "plainly meritless" label cannot be applied, on this record, to Petitioner's contention that there is a "reasonable possibility" his appeal would have come out differently but for appellate counsel's decision to omit the LCN DNA issue. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The Court cannot, of course, say at this stage whether Petitioner will ultimately prevail. Nevertheless, the fact that the New York Court of Appeals itself disparaged the trial court's *Megnath* holding shows that an appeal on this

---

[4] Petitioner's claim that *trial* counsel was ineffective is substantially weaker, on first glance, than his claim of ineffective appellate assistance. Megnath claims that trial counsel failed to "vigorously attack" the LCN DNA evidence. Petition at 11. But trial counsel did seek, and litigate, a *Frye* hearing on the subject. *Megnath*, 898 N.Y.S.2d at 406-07. The Petition does not allege with specificity what other course trial counsel should have attempted, or what he did that he should not have. *See* Petition at 3, 11.

10

issue was potentially worth pursuing. Petitioner's claim to have received ineffective assistance of appellate counsel therefore is not "plainly meritless."

## C. Dilatory Tactics

Finally, Petitioner was prompt in filing both his habeas corpus petition and his motion for a stay of that petition, indicating that he is not engaging in intentional delay. Indeed, he filed his *pro se* petition eleven days before appellate counsel did, and filed his motion to stay only a few months later. *See Torres v. Graham*, No. 06-CV-0785, 2007 WL 1233555, at *5 (E.D.N.Y. Apr. 20, 2007) (petitioner not dilatory where he was "prompt in filing his original habeas petition").

### III. Conclusion

For the reasons set forth above, the Court will stay the adjudication of this petition pending Petitioner's exhaustion, in state court, of the claim that his counsel was ineffective on direct appeal for failure to raise the LCN DNA issue. In doing so, the Court must place "reasonable time limits on a petitioner's trip to state court and back." *Rhines*, 544 U.S. at 278; *see Zarvela v. Artuz*, 254 F.3d 374, 381 (2d Cir. 2001) ("When a district court, confronted with a mixed petition, elects to stay the petition, it should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval.").

11

Therefore, the stay is subject to the following conditions: Petitioner must initiate any state court action to exhaust his claims within sixty days of the date of this Order; Petitioner must file a status report with the Court confirming the date on which he initiated the exhaustion effort; and Petitioner must notify the Court within thirty days after exhaustion is complete, at which time the Court will lift the stay. The Clerk of the Court is directed to mail a copy of this Order to Petitioner.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:   September 30, 2021
         Brooklyn, New York