UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

HEMANT MEGNATH,

                         Petitioner,               **MEMORANDUM & ORDER**
                                                   20-CV-1305(EK)

         -against-

MARK ROYCE,

                         Respondent.

------------------------------------x

ERIC KOMITEE, United States District Judge:

        Hemant Megnath petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Proceeding *pro se*, he challenges his May 2010 New York State convictions for murder, intimidating a victim, bribing a witness, and coercion.  Megnath's petition argues that (1) his trial and appellate counsel were constitutionally ineffective for failing to adequately challenge the admission of certain DNA evidence; (2) the evidence supporting his conviction was legally insufficient; (3) the prosecutor engaged in misconduct at trial; and (4) the trial court erred in excluding certain alibi evidence.

        In September of 2021, I stayed this case to allow Megnath to exhaust his claim of ineffective assistance of appellate counsel.  Megnath now returns to this court having completed that process.  For the following reasons, Megnath's petition is denied in its entirety.

## I.    Factual and Procedural History

Megnath is serving a life sentence without the
possibility of parole for the murder of Natasha Ramen, as well
as for intimidating and bribing witnesses and for coercion.
Aff. & Mem. of L. in Opp. Pet. ("Resp't Aff. & Mem.") ¶¶ 4, 7–9,
ECF No. 35.  The recitation below is derived from testimony at
Megnath's trial.

### A. Ramen's Murder

On the morning of March 15, 2007, Ramen was attacked
as she left her Queens home.  *See* Dhanrajee Lackraj 548:8–24.[1]  A
man put his arm around Ramen's neck.  *See id.*  The man then
"disappeared."  *See id.* at 553:1–2.  Ramen's landlady, who
witnessed the attack, discovered that Ramen's "throat was slit."
*See id.* at 554:3–4.  Ramen died from this wound around midnight
that night.  *See* Leonard Ramen 633:8–15 (time of death); Dr.
Michael Greenberg 1112:3–10 (cause of death).

### B.    The Investigation

The NYPD began investigating Megnath as a suspect on
the day of the murder.  *See* Det. Vincent Santangelo 1036:25–
1037:15, 1039:12–15.  Among other discoveries, upon swabbing
Megnath's car for biological matter, investigators found Ramen's
DNA inside, on the driver's side.  *See* Det. John Entenmann

---

[1] Citations to a name indicate testimony given by that witness at trial.
"Tr." denotes non-testimonial portions of the trial record.  The trial
transcript is filed at ECF Nos. 35-1 to 35-11.

803:11–13; Cynthia Restrepo 1202:12–1203:25; Ewelina Bajda 1376:6–1377:25, 1388:8–11.  This finding was confirmed through two analyses: (1) conventional DNA analysis, and (2) "Low Copy Number," or "LCN," DNA analysis.  *See* Cynthia Restrepo 1202:12–1203:25 (conventional); Ewelina Bajda 1376:6–1377:25, 1388:8–11 (LCN).  As the state trial court explained, "LCN DNA analysis . . . uses a smaller sample of actual DNA evidence" for testing than conventional - i.e., *high* copy number - DNA analysis. *People v. Megnath*, 898 N.Y.S.2d 408, 410 (N.Y. Sup. Ct. 2010).

In addition, investigators swabbed under the driver's door handle, which appeared bloody, and found blood.  *See* Det. John Entenmann 808:12–14; Ewelina Bajda 1425:8–18.  However, that sample — the only sample from a source with visible blood — did not test positive for Ramen's DNA.  *See* Det. John Entenmann 887:12–16; *see also* Ewelina Bajda 1374:3–24, 1425:8–18.

The NYPD also searched Megnath's computer.  *See* Det. Yolanda Johnson 957:13–960:22.  A detective found that it had been used to search Ramen's name across several address databases.  *See id.* at 975:8–990:20.  When the detective recreated one of the searches, she found the Queens address where Ramen was murdered.  *See id.* at 990:21–993:14. Furthermore, the name "Ramen" appeared 2,145 times on the computer.  *See id.* at 1024:3–5.

C.    **Trial Court Proceedings**

     1. *Frye* Hearing

          Before his trial, Megnath's trial counsel, Todd
Greenberg, sought a hearing under *Frye v. United States*, 293 F.
1013 (D.C. Cir. 1923), to challenge the admissibility of the LCN
DNA analysis of samples from Megnath's car.  *Megnath*, 898
N.Y.S.2d at 410.  Under *Frye*, "expert testimony based on
scientific principles or procedures is admissible," but only
after "a principle or procedure has gained general acceptance in
its specified field."  *People v. Williams*, 147 N.E.3d 1131, 1139
(N.Y. 2020).[2]  *Frye* governs admissibility of DNA and similar
evidence in New York.  *See Megnath*, 898 N.Y.S.2d at 412; *accord
Parker v. Mobil Oil Corp.*, 857 N.E.2d 1114, 1120 n.3 (N.Y.
2006).

          Megnath's trial counsel argued that, as compared with
conventional DNA testing, LCN DNA testing has "increased
incidence" of certain "scientific issues or phenomena" that
impair test results.  *Megnath*, 898 N.Y.S.2d at 413–14.

          The trial court rejected this argument, ruling that
"the People clearly demonstrated, through sufficient credible
evidence presented at the *Frye* hearing, that LCN DNA testing as
performed" in this case "is generally accepted as reliable in

---

          [2] Unless otherwise noted, when quoting judicial decisions this order
accepts all alterations and omits all citations, footnotes, and internal
quotation marks.

the forensic scientific community and meets the standard as enunciated in *Frye*." *Id.* at 413.  The court credited the testimony at the hearing of "five reputable forensic scientists" that the LCN DNA testing performed in Megnath's case would "consistently yield reliable results." *Id.* at 413-14.  The court then went further, opining that LCN DNA testing is not even "a *novel* scientific technique" requiring its own *Frye* analysis, but "is basically the same technique" as long-accepted conventional DNA testing. *See id.* at 415.  Consequently, the trial court denied Megnath's motion to exclude LCN DNA test results under *Frye*. *Id.*

   2. The State's Case

      The State called twenty-four witnesses at trial. *See* Tr. 2498-502, 2505-06.  In addition to recounting the investigatory steps described above, the State presented the following evidence:

      Ramen had instituted a complaint for rape against Megnath in 2006. *See* Sara Litman 563:8-565:5, 566:24-567:1.  These charges were pending against Megnath at the time of Ramen's death. *See id.*

      In the months prior to Ramen's murder, Megnath had repeatedly and unsuccessfully sought to convince Ramen to drop the rape allegation. *See* Rabindaurath Ramen 692:2-703:8.  First, Megnath implored Ramen's father-in-law to intervene. *See*

*id.* at 694:13-16.  Next, he offered a bribe.  *See id.* at 700:4-15.  Eventually, he threatened to kill Ramen and her family. *See id.* at 703:4-8.

A few months after making this threat, Megnath approached Jarad Lojeck, his friend and colleague.  *See* Jarad Lojeck 906:22-907:7.  Megnath knew that Lojeck was skilled in martial arts.  *See id.*  Megnath asked Lojeck how to procure "small weapons" like "knives."  *See id.* 906:22-907:7.  Lojeck advised Megnath that he could obtain knives from "iisports.com."[3] *See id.* at 907:3-23.  When Megnath's computer was later searched, the text string "iisports.com" appeared on the computer.  *See* Det. Yolanda Johnson at 973:11-23.

Ramen's husband saw Megnath's car parked about one house away from Ramen's Queens home shortly before her death. *See* Leonard Ramen 618:3-631:16.[4]  Megnath lived in Brooklyn, not Queens, and he worked in Manhattan.  *See* Ghaneshri Megnath 1986:22-1987:5; Jarad Lojeck 902:21-903:11.  Moreover, consistent with the denial of Megnath's motion to exclude LCN DNA evidence, the State introduced such evidence connecting Ramen to Megnath's car.  Ewelina Bajda 1376:6-1377:25, 1388:8-11.  The State argued that Ramen's DNA was present because of

---

[3] The transcript also spells this as "iisport.com."

[4] *See also* Ghaneshri Megnath 1987:15-1988:3 (identifying Megnath's car as the same one seen near Ramen's Queens home).

Megnath's "coming into contact with her bodily fluid" during the murder and then touching parts of the car.  *See* Tr. 2408:3-8 (State summation).

   3. The Defense Case

        Megnath called twelve witnesses.  *See* Tr. 2503-505. Part of the defense case attacked the State's DNA evidence and the inferences that could be drawn from that evidence. Megnath's neighbor testified to having seen Ramen stepping out of Megnath's car and entering Megnath's apartment in Brooklyn. *See* Gabriella Guevera-Trahan 1829:2-1830:14.  The defense argued that Ramen had been in Megnath's car and left DNA prior to the day of the murder.  *See* Tr. 2258:3-2259:7 (defense summation).

        The defense also called Dr. Bruce Budowle as an expert in LCN DNA.  Tr. 1457:12-17.  Dr. Budowle opined that the LCN DNA test results in Megnath's case were "not reliable," "inconsistent and questionable in a number of places."  Dr. Bruce Budowle 1459:24-1460:7.  The defense argued that the LCN DNA evidence should receive "very little weight" because of "the lack of science as per Doctor Budowle."  Tr. 2274:13-19 (defense summation).

        In addition to addressing DNA evidence, the defense sought to present "a circumstantial alibi" for Megnath.  Tr. 1804:9-10.  Trial counsel sought to elicit testimony from Megnath's neighbor and his sister that, together, would imply

that Megnath had taken his garbage out on the morning of the murder.  *See id.* at 1803:17-1804:2.  Specifically, defense counsel proffered that Megnath's sister would testify that around 8:00 a.m. on the morning of the murder, she saw Megnath's car, but no garbage bags, outside Megnath's home.  *See id.* 1808:2-8.  Then Megnath's neighbor would testify that she saw garbage bags outside Megnath's home at 8:30 a.m.  *See id.* at 1802:20-22.  Moreover, the neighbor would testify, Megnath "is the one who takes out the garbage" from his home at "that time of the year."  *Id.* at 1803:1-7.

However, the trial court precluded both witnesses from testifying about the garbage (or lack thereof) in front of Megnath's home.  *See id.* 1813:11-13, 1818:19-21, 1952:10-13, 1963:14-1964:1.  The court held that the proffered testimony was evidence not of "alibi" but of Megnath's "habit of taking the garbage out."  *See id.* at 1805:6-10.  And the court ruled that inferring habit from the proffered testimony would be "ripe speculation."  *See id.* at 1811:3-9.

4. <u>Conviction and Sentencing</u>

After the close of evidence, the State voluntarily dismissed charges of witness tampering and criminal possession of a weapon.  *See id.* at 2173:9-25.[5]  The jury found Megnath

---

[5] The State also dismissed a third-degree witness intimidation charge, while proceeding on a first-degree witness intimidation charge.  *See id.*

guilty on the remaining charges: murder, intimidating and bribing witnesses, and coercion.  Tr. 2493:12–21.[6]  He was sentenced on May 11, 2010 to (1) life imprisonment without the possibility of parole for the murder count, (2) a concurrent sentence of twenty-five years for witness intimidation, and (3) indeterminate terms of imprisonment of from two and one-third to seven years for each bribing and coercion count, to be served consecutively to each other and the murder sentence.  *See* Sentencing Tr. 27:8–17, ECF No. 35-11.

## D.   Appeals and Collateral Proceedings

Megnath appealed his conviction to the Appellate Division, Second Department.  *See* Megnath Br., ECF No. 35-12. Richard Mischel represented Megnath on direct appeal.  Pet. 14, ECF No. 1.  In that appeal, Mischel raised three of the arguments that Megnath raises here: that (1) the evidence supporting his conviction was legally insufficient; (2) the prosecutor engaged in misconduct at trial; and (3) the trial court erred in excluding evidence that Megnath had taken out his garbage in Brooklyn on the morning of the murder in Queens.  *See* Megnath Br. at 39.

In August of 2018, the appellate court affirmed the trial court's judgment in its entirety.  Decision & Order, ECF

---

[6] The jury convicted on first-degree murder and thus did not reach the lesser charge of second-degree murder.

No. 35-14.  Megnath sought leave to appeal to the New York Court
of Appeals; that court denied leave in December of 2018.  Order
Denying Leave, ECF No. 35-17.

As discussed in my prior order staying this case,
following the denial of leave to appeal, Megnath submitted two
petitions for habeas corpus in this court — one through attorney
Mischel, and another *pro se*.  *See* Mem. & Order 4 n.2.  The *pro
se* petition included all of the claims in Mischel's petition and
added claims that both Mischel and Megnath's trial counsel, Todd
Greenberg, had rendered ineffective assistance.  *See id.*; *see
also* Pet. 11, 14.  Specifically, Megnath asserted that trial
counsel had failed to "vigorously attack" the State's LCN DNA
evidence, and that appellate counsel had failed to challenge the
admission of LCN DNA evidence on appeal.  *See* Pet. 11.
Recognizing that Mischel could not argue his own
ineffectiveness, Megnath elected to proceed *pro se* and to pursue
both claims of ineffective assistance.  *See* Mem. & Order 4 n.2.

Megnath's ineffective assistance of counsel claims had
not been exhausted in state court.  *See id.* at 2.  As a result,
Megnath's petition was "mixed" — partially unexhausted.  *See id.*
at 5.  For the reasons discussed in my prior order, I stayed
this case under *Rhines v. Weber*, 544 U.S. 269 (2005) to allow
Megnath to exhaust his claim for ineffective assistance of
appellate counsel.  *See* Mem. & Order 10-11 & n.4.  That claim

could still be raised in state court through a writ of error
*coram nobis*.  *See id.* at 5-6, 6 n.3.[7]

Since that decision, Megnath applied in state court
for such a writ; the Appellate Division, denied Megnath's
application; and the Court of Appeals denied leave to appeal.
*See* Decision & Order, ECF No. 35-20; Order Denying Leave, ECF
No. 35-23.  I consequently lifted the stay, Order dated July 27,
2023, and held oral argument, at which Megnath argued *pro se*.

## II.  Discussion

As noted, Megnath's petition argues that (1) his trial
and appellate counsel were constitutionally ineffective for
failing to adequately challenge the admission of LCN DNA
evidence; (2) the evidence supporting his conviction was legally
insufficient; (3) the prosecutor engaged in misconduct at trial;
and (4) the trial court erred in excluding evidence that Megnath
took out his garbage on the morning of the murder.  As discussed
further below, none of these claims warrant habeas relief.

---

[7] The stay order determined that the *Rhines* test for stay and abeyance
was satisfied as to the ineffective assistance of *appellate* counsel claim and
granted stay and abeyance without considering if it was also satisfied as to
ineffective assistance of *trial* counsel.  *See* Mem. & Order 11.  However, as
further discussed below, the order observed that Megnath's "ineffective
assistance of trial counsel claim" was on its face "substantially weaker"
than his claim of ineffective assistance of appellate counsel.  *Id.* at 10
n.4.  Megnath had not "allege[d] with specificity what other course trial
counsel should have attempted, or what he did that he should not have."  *Id.*

**A. Ineffective Assistance of Counsel**

   1. <u>Trial Counsel</u>

       Megnath's petition remains mixed: he has not exhausted his claim that his *trial* counsel was ineffective.  New York procedure allows Megnath to pursue a motion to vacate the judgment premised on ineffective assistance of trial counsel "[a]t any time after the entry of a judgment."  N.Y. C.P.L. § 440.10(1) and (2)(c).  Megnath conceded during oral argument that he did not exhaust this claim.[8]

       While federal courts are barred from "*granting* relief to an applicant who has not exhausted the remedies available in the courts of the State," they are welcome to "deny the petition, regardless of whether the applicant exhausted his state court remedies."  *Abuzaid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013) (citing 28 U.S.C. §2254(b)).  As this order grants Megnath no relief, Megnath's ineffective assistance of trial counsel claim "may be denied on the merits."  *See id.*[9]

---

[8] I do not understand Megnath to be seeking another stay and abeyance to exhaust this claim.  Nor would any be forthcoming.  My order staying this case stated that Megnath "must initiate *any* state court action to exhaust his *claims* within sixty days of the date of this Order," i.e. by November 29, 2021.  Mem. & Order 12 (emphasis added).  By its terms, that deadline applied to any unexhausted claims, not just the ineffective assistance of appellate counsel claim that motivated the stay.

[9] Because Megnath's exhausted claims are meritless, I need not "allow [Megnath] to delete the unexhausted claims," as "dismissal of the entire petition" would not "unreasonably impair [his] right to federal relief." *Rhines*, 544 U.S. at 278; *see also Brewer v. Eckert*, No. 19-CV-6486, 2020 WL 10061923, at *6 (W.D.N.Y. Sept. 10, 2020) ("The Court need not attempt to

To prevail on an ineffective assistance of trial counsel claim, Megnath must "establish both his trial counsel's deficient performance and the defendant's resulting prejudice." *Farhane v. United States*, 77 F.4th 123, 126 (2d Cir. 2023) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The prejudice prong requires Megnath to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Williams v. Taylor*, 529 U.S. 362, 391 (2000). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The order staying this case observed that Megnath's "claim that trial counsel was ineffective is substantially weaker, on first glance, than his claim of ineffective appellate assistance." Mem. & Order 10 n.4. The premise of Megnath's claim is that "trial counsel failed to 'vigorously attack' the LCN DNA evidence." *Id.* (quoting Pet. 11). Yet trial counsel "did seek, and litigate" a *Frye* hearing to challenge that evidence's admissibility. Mem. & Order 10 n.4. And Megnath "does not allege with specificity what other course trial counsel should have attempted, or what he did that he should not have." Mem. & Order 10 n.4. At bottom, Megnath appears to

divine whether Petitioner wishes to delete his unexhausted claim because . . . the Petition must be denied.").

contend that his trial counsel was ineffective because he did not prevail in the *Frye* hearing.

Megnath's ineffective assistance of trial counsel claim is meritless under *Strickland*.  Even assuming that trial counsel's attack on the LCN evidence was insufficiently "vigorous," Megnath cannot show to a reasonable probability that a more forceful attack on the LCN evidence would have altered the outcome here.

First, his attorney sought to exclude the LCN DNA evidence.  While he did not prevail, "that is no evidence that [the] losing lawyer was ineffective." *Franza v. Stinson*, 58 F. Supp. 2d 124, 135 (S.D.N.Y. 1999).  Indeed, after the trial court's ruling admitting LCN DNA evidence, "approximately ten decisions of various [New York] trial courts" found the decision in Megnath's case persuasive and likewise admitted LCN DNA evidence. *See People v. Williams*, 147 N.E.3d 1131, 1140 (N.Y. 2020) ("Underlying" those ten decisions "was the ruling in *Megnath* . . . .").

A decade after Megnath's *Frye* hearing, in *Williams*, the New York Court of Appeals held that admitting LCN DNA evidence without a *Frye* hearing was an abuse of discretion. *See id.*  In doing so, the court criticized the *Frye* analysis in Megnath's case. *See id.*  Yet, even with the benefit of the *Williams* decision, a New York trial court has since held a *Frye*

14

hearing and *admitted* LCN DNA evidence.  *People v. Burrus*, 200
N.Y.S.3d 655, 722 (N.Y. Sup. Ct. 2023).  There is simply no
indication that the LCN DNA evidence was admitted in Megnath's
case because of ineffective trial counsel.

Furthermore, counsel's attack on the LCN DNA evidence
did not stop after the *Frye* hearing.  Rather, he called an
expert to opine that the LCN DNA test results in Megnath's case
were "not reliable," "inconsistent and questionable in a number
of places."  *See* Dr. Bruce Budowle 1459:24-1460:7.  And, in his
summation, he urged the jury to discredit the LCN DNA evidence
based on this expert testimony.  *See* Tr. 2274:13-19.

Moreover, the LCN evidence was just one of two sets of
analyses of DNA showing the presence of Ramen's DNA in Megnath's
car.  As discussed, the State also introduced conventional -
*high* copy number - DNA evidence.  *See, e.g.*, Cynthia Restrepo
1197:25-1199:4 ("This is the table I created reflecting the
results of the DNA testing . . . for the samples that went
through the high copy number testing.").  Thus, eliminating the
LCN evidence would merely have reduced the volume of admissible
DNA evidence.  The Second Circuit has held that where, as here,
evidence of a fact was "overwhelming," counsel's failure to
maximally contest that fact "would not have affected the outcome
of the trial."  *United States v. Gabayzadeh*, 428 F. App'x 43, 48
(2d Cir. 2011) (applying *Strickland*, 466 U.S. at 694).

In addition, the defense theory at trial was that Megnath and Ramen had a social relationship and that Ramen had herself been in Megnath's car. *See* Tr. 2258:3-2259:7 (defense summation). Indeed, the defense elicited testimony from a disinterested eyewitness who saw Ramen leave Megnath's car. *See* Gabriella Guevera-Trahan 1829:2-1830:14. That defense theory accepted that Ramen's DNA was in Megnath's car and provided a non-culpable explanation — which may well have made sense, given that the State's only test of a visibly bloody source did not match Ramen's DNA. *See* Det. John Entenmann 887:12-16; *see also* Ewelina Bajda 1374:3-24, 1425:8-18.

The ineffective assistance of trial counsel claim is denied.

## 2. Appellate Counsel

Megnath also claims that his appellate counsel was ineffective because he did not challenge the admission of LCN DNA evidence on appeal. *See* Pet. 11. Unlike Megnath's ineffective assistance of trial counsel claim, this ineffectiveness claim has now been presented to New York's courts, which rejected it on the merits. *See* Decision & Order, ECF No. 35-20. The Appellate Division denied Megnath's writ of error *coram nobis* because he "failed to establish that he was denied the effective assistance of appellate counsel." *Id.*

Where a state court has rejected an ineffective assistance claim on the merits, a habeas petitioner can prevail on that claim only if "the state court either identified the federal standard for ineffective assistance but applied that standard in an objectively unreasonably way," or "the state applied a rule that contradicts the federal standard." *Rosario v. Ercole*, 601 F.3d 118, 122 (2d Cir. 2010); *see* 28 U.S.C. § 2254(d). "[W]hen evaluating *Strickland* claims governed by § 2254(d)," federal courts owe "*double deference*." *Waiters v. Lee*, 857 F.3d 466, 477 n.20 (2d Cir. 2017). That is, they owe deference both to counsel's "strategic decisions under *Strickland* itself" and to "the state court's application of *Strickland*." *Dorcinvil v. Kopp*, No. 20-CV-600, 2024 WL 69093, at *11 (E.D.N.Y. Jan. 5, 2024).

Megnath cannot satisfy this standard. The state court relied on *Jones v. Barnes*, 463 U.S. 745 (1983), and *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004). Both of these cases stand for the proposition that appellate counsel is not ineffective for selecting among possible arguments on appeal rather than raising every colorable issue.

That rule of law is not at odds with Supreme Court precedent. *Jones* remains good law. *See Weingarten v. United States*, 865 F.3d 48, 53 & n.4 (2d Cir. 2017). As the Second Circuit put it just a few years ago, *Jones* "long ago made clear

that the Sixth Amendment does not require counsel to raise every non-frivolous argument a client requests." *Id.* at 53.

The New York courts' application of the *Jones* rule here was not "objectively unreasonable." The *Jones* court expressly recognized that "page limits on briefs" require appellate lawyers to raise fewer than all colorable arguments. *See* 463 U.S. at 753. Here, Megnath's appellate counsel was limited to filing a brief of no more than 17,500 words, despite his having requested an expansion. *See* Decl. of Richard E. Mischel dated March 2, 2021 ("Mischel Decl.") ¶ 7, ECF No. 35-19. He used nearly every word he was granted to make three legal points other than a challenge to the LCN DNA evidence. *Id.* ¶ 10.

Moreover, counsel's decision not to raise the LCN DNA issue was justified. As already noted, at the time of the appeal in this case, many New York courts had admitted LCN DNA evidence. The Court of Appeals' decision in *Williams* was years away, and "an attorney is not required to forecast changes or advances in the law in order to provide effective assistance." *McCoy v. United States*, 707 F.3d 184, 188 (2d Cir. 2013). Furthermore, eliminating the evidence in this case would not have been reasonably likely to result in Megnath's acquittal given the presence of conventional DNA evidence establishing the same facts. Indeed, when the Megnath family sought a second

18

opinion from another lawyer before Megnath's counsel filed his appellate brief, the second opinion was that raising the LCN DNA issue would be "virtually certain not to result in relief." Mischel Decl. ¶ 16 (quoting an email from Jonathan Edelstein, Esq.).

For these reasons, it was not "objectively unreasonable" for the state court to hold that Megnath's appellate counsel properly elected not to raise the admissibility of LCN DNA evidence on appeal.  Megnath's ineffective assistance of appellate counsel claim is thus denied.

**B. Sufficiency of the Evidence**

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Jackson v. Virginia*, 443 U.S. 307, 315 (1979).  Megnath's petition argues that the evidence at trial was insufficient to convict him.  *See* Pet. 6.

However, the state court rejected this argument based on, among other reasons, an independent and adequate state ground: Megnath's failure to preserve it at trial.  *See* Decision & Order 1, ECF No. 35-14; *see also Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011).  To preserve a legal issue for appellate

review in New York, a party must register a "protest" of the trial court's resolution of the issue "at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same."  N.Y. C.P.L. § 470.05(2).  "[T]he contemporaneous objection rule is a firmly established and regularly followed New York procedural rule" that is "independent" of the merits of Megnath's claims. *Downs*, 657 F.3d at 104.

That "independent and adequate" state ground of decision controls.  *See id.*  "[F]ederal habeas review is precluded as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).

While it is possible to avoid a state procedural bar with a showing of "cause and prejudice," *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), Megnath's only suggestion of "cause" is the ineffective assistance of trial counsel claim rejected above.

Procedural defaults may also be excused to avoid a "miscarriage of justice" where the petitioner presents a "credible and compelling claim of actual innocence."  *Rivas v. Fischer*, 687 F.3d 514, 540-41 (2d Cir. 2012).  But this avenue is available only upon "new reliable evidence . . . not

presented at trial." *Id.* at 541 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).  There is no such new evidence here.

The sufficiency of the evidence claim is denied.

## C. Prosecutorial Misconduct

Megnath also asserts that prosecutorial misconduct during trial deprived him of "due process and a fair trial." Pet. 8.  Megnath contends that the prosecutor made improper statements during summation and asked improper questions during cross-examination.

Comments of prosecutors during trial "warrant habeas relief only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014) (citing *Darden v. Wainwright*, 477 U.S. 168, 180 (1986)).  A habeas court "must consider the record as a whole when making this determination, because even a prosecutor's inappropriate or erroneous comments or conduct may not be sufficient to undermine the fairness of the proceedings when viewed in context." *Id.*  However, the habeas court should not consider procedurally defaulted issues — including other instances of prosecutorial misconduct — when considering the merits of a prosecutorial misconduct claim.  *See id.* at 143–44.

Megnath's claim of misconduct during summation was rejected by the Second Department for — among other reasons —

failure to preserve the issue at trial.  *See* Decision & Order 2, ECF No. 35-14.  It is therefore, like his sufficiency of the evidence claim, procedurally defaulted.  *See Velasquez*, 898 F.2d at 9.

In contrast, the Second Department rejected Megnath's claim of improper cross-examination solely on its merits.  *See id.*  The improper cross-examination claim is therefore considered here on its merits, but without considering any purportedly improper summation.  *See Jackson*, 763 F.3d at 143–44.

Megnath argues that several questions asked during the cross-examinations of two defense witnesses deprived him of a fair trial.[10]

Megnath first challenges the prosecutor's questioning of his uncle, Bashist Sharma, a Texas lawyer who assisted Megnath in defending against Ramen's rape allegation.  Sharma testified on redirect that plea bargaining is "like buying a new car."  Bashist Sharma 1763:19–20.  On recross, the prosecutor asked if Sharma was "comparing plea bargaining, where your nephew is indicted for a violent rape" to "negotiating for the buying and selling of a used car."  *Id.* at 1765:25–1766:3.

---

[10] These contentions are drawn from Megnath's counseled brief on appeal. Megnath Br. 58–66, ECF No. 35-12.  Megnath's *pro se* petition states that the prosecutorial misconduct argument for which he seeks habeas review is the same one his counsel raised on appeal.  *See* Pet. 8.

Megnath also challenges several questions asked of Fred Assenza, Megnath's lawyer in his rape case.  Assenza testified that he "had to coax the Judge into giving" him a long adjournment of trial.  Fred Assenza 1922:17–18.  The prosecutor then asked whether Assenza was "telling this jury and this Court" that he was "willing to mislead the Judge" in Megnath's rape case "in order to get the trial date" the defense preferred.  *Id.* at 1923:17–19.

Another part of the cross-examination of Assenza focused on Assenza's instruction to Megnath to leave his workplace during the murder investigation and not to return home.  *See id.* at 1900:21–23, 1903:11–12.  During this segment, the prosecutor asked Assenza if he knew about the prohibition on "hindering prosecution," and then asked Assenza if he would like to assert his right to counsel.  *See id.* at 1899:9–1900:17.

The Second Department, in affirming the trial court's judgment, held that the prosecutor's cross-examination "was properly limited to the witnesses' testimony on direct examination."  Decision & Order 2, ECF No. 35-14.  Moreover, it was "relevant to the witnesses' credibility, veracity, and honesty."  *Id.*

That holding was not contrary to, or an unreasonable application of, clearly established federal law.  *See Rosario*, 601 F.3d at 122; 28 U.S.C. § 2254(d)(1).  The relevant question

is whether this cross-examination "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Jackson*, 763 F.3d at 146 (citing *Darden*, 477 U.S. at 180). "When reviewing prosecutorial misconduct claims under the "unreasonable application prong" of Section 2254(d)(1), "the habeas court must keep in mind that this standard is a very general one that affords courts leeway in reaching outcomes in case-by-case determinations." *Id.* Even where a prosecutor's behavior was "inappropriate, unethical, or even erroneous," a state court determination that the trial was fair may not be unreasonable. *Id.* at 148.

Here, it was not unreasonable for the Second Department to conclude that the cross-examinations of Sharma and Assenza did not unduly infect Megnath's trial with unfairness. Even assuming the prosecutor's questions were objectionable, they were "largely innocuous when considered in the context of the substantial scientific evidence against" Megnath. *Poirier v. Graham*, No. 17-CV-1457, 2018 WL 5314745, at *11 (S.D.N.Y. Apr. 24, 2018), *report and recommendation adopted*, 2018 WL 5312902 (S.D.N.Y. Oct. 25, 2018) (denying prosecutorial misconduct habeas claim under *Jackson*).

Megnath's prosecutorial misconduct claims are denied.

**D. Exclusion of Alibi Evidence**

"The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment." *Wade v. Mantello*, 333 F.3d 51, 57 (2d Cir. 2003). Megnath asserts that he was denied this right because the trial court excluded testimony supporting his "circumstantial alibi case," Tr. 1804:9-10 — that the jury could infer that he was at home taking out his garbage on the morning of Ramen's murder. *See* Pet. 9. The trial court excluded testimony from his neighbor and his sister that together would have demonstrated that (1) the garbage was taken out of Megnath's home sometime around 8:00 a.m., and (2) Megnath probably would have taken out that garbage because he usually did. *See* Tr. 1803:1-7 and 17-22. The trial court deemed Megnath to be proffering "habit" evidence that failed the test of admissibility for such evidence, as the proffered pattern of taking out the home's garbage in the morning was not sufficiently habitual. *See id.* at 1805:6-10, 1811:3-9.

The Second Department rejected Megnath's argument on this point on the merits, holding that the trial court properly excluded the evidence for failure to meet the requirements of habit evidence. *See* Decision & Order 2, ECF No. 35-14. In

support, the Second Department cited *People v. Simmons*, 39
A.D.3d 235, 236 (N.Y. App. Div. 1st Dep't 2007).  In *Simmons*,
the First Department held that the trial court "properly
precluded [a witness] from testifying that, in the month
preceding the robbery, defendant generally came directly home
every evening after work and remained there."  *Id.*  That
testimony was "not admissible as habit evidence, because there
was no showing of such a repetitive pattern as to be predictive
of defendant's conduct," and it "had no probative value with
regard to whether he may have behaved differently on a
particular night."  *Id.*

          The state court's rejection of Megnath's argument,
relying on *Simmons*, was not contrary to, or an unreasonable
application of, clearly established federal law.  *See Rosario*,
601 F.3d at 122; 28 U.S.C. § 2254(d)(1).  The Supreme Court
gives states considerable latitude to exclude evidence from
criminal trials under rules of evidence.  *See Nevada v. Jackson*,
569 U.S. 505, 509 (2013).  Rules that are not "arbitrary or
disproportionate to the purposes they are designed to serve" are
unobjectionable.  *Rock v. Arkansas*, 483 U.S. 44, 56 (1987).

          Here, the trial court applied a New York limit on the
admissibility of evidence that was neither arbitrary nor
disproportionate.  That limit, as interpreted in *Simmons*,
precludes as "not probative" evidence of repeated behavior that

does not rise to the level of a habit.  39 A.D.3d at 236.  The Supreme Court has expressly confirmed that rules of evidence that "exclude evidence if its probative value is outweighed" are constitutional.  *See Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).

The claim based on the exclusion of alibi evidence is denied.

### III. Conclusion

Megnath's petition for a writ of habeas corpus is denied.  Because Megnath has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability will not issue.  28 U.S.C. § 2253.  I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and in forma pauperis status is therefore denied for purposes of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  Megnath, however, has a right to

seek a certificate of appealability from the Court of Appeals

for the Second Circuit.  *See* 28 U.S.C. § 2253(c)(1).


          SO ORDERED.



                              /s/ Eric Komitee
                              ERIC KOMITEE
                              United States District Judge


Dated:    February 23, 2024
          Brooklyn, New York